# United States Court of Appeals for the Federal Circuit

---

**ULTRATEC, INC.,**
*Appellant*

**v.**

**CAPTIONCALL, LLC,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS & DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT & TRADEMARK OFFICE, UNITED STATES,**
*Intervenors*

---

2016-1706, 2016-1707, 2016-1710, 2016-1712

---

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2013-00540, IPR2013-00541, IPR2013-00544, IPR2013-00545.

-------------------------------------------------------------------

**ULTRATEC, INC.,**
*Appellant*

**v.**

**CAPTIONCALL, LLC,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS & DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT & TRADEMARK OFFICE, UNITED STATES,**
*Intervenors*

————————————

2016-1708, 2016-1709, 2016-1715

————————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2013-00542, IPR2013-00543, IPR2013-00550.

------------------------------------------------------------------

**ULTRATEC, INC.,**
*Appellant*

**v.**

**CAPTIONCALL, LLC,**
*Appellee*

**JOSEPH MATAL, PERFORMING THE FUNCTIONS & DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR, U.S. PATENT & TRADEMARK OFFICE, UNITED STATES,**
*Intervenors*

————————————

2016-1713, 2016-2366

————————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2013-00549, IPR2014-00780.

———————

Decided: August 28, 2017

———————

KRISTIN GRAHAM NOEL, Quarles & Brady, LLP, Madison, WI, argued for appellant. Also represented by ANTHONY ALLEN TOMASELLI, MATTHEW J. DUCHEMIN, STEPHEN J. GARDNER, MARTHA JAHN SNYDER; EDWARD KING POOR, Chicago, IL; MICHAEL A. JASKOLSKI, Milwaukee, WI; NIKIA L. GRAY, Washington, DC; MICHAEL J. CURLEY, Tucson, AZ.

PRATIK A. SHAH, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, argued for appellee. Also represented by ZE-WEN JULIUS CHEN, RACHEL J. ELSBY; MICHAEL P. KAHN, CAITLIN ELIZABETH OLWELL, New York, NY.

FARHEENA YASMEEN RASHEED, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for intervenor Joseph Matal. Also represented by NATHAN K. KELLEY, THOMAS W. KRAUSE, JEREMIAH HELM, SCOTT WEIDENFELLER.

MARK R. FREEMAN, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, for intervenor United States. Also represented by SARAH CARROLL.

———————

Before NEWMAN, LINN, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

The present appeals arise from a series of inter partes reviews ("IPRs") between Ultratec, Inc. ("Ultratec") and CaptionCall, LLC ("CaptionCall"). Ultratec owns U.S. Patent Nos. 5,909,482 ("the '482 patent"), 6,233,314 ("the '314 patent"), 6,594,346 ("the '346 patent"), 6,603,835 ("the '835 patent"), 7,003,082 ("the '082 patent"), 7,319,740 ("the '740 patent"), 7,555,104 ("the '104 patent"), and 8,213,578 ("the '578 patent"). The patents disclose and claim systems for assisting deaf or hard-of-hearing users to make phone calls. CaptionCall petitioned for IPR of certain claims of Ultratec's patents. The Patent Trial and Appeal Board ("the Board") held that all challenged claims were either anticipated or would have been obvious in light of a variety of prior art references. Ultratec appealed to our court. The United States Patent and Trademark Office and the Department of Justice (collectively, "the PTO") intervened to defend the Board's decisions. Because the Board failed to consider material evidence and failed to explain its decisions to exclude the evidence, we vacate and remand.

## BACKGROUND

Ultratec and CaptionCall are currently litigating in both district court and before the Board. Ultratec sued CaptionCall and its parent company for infringement in the Western District of Wisconsin. The case proceeded to trial, where the jury found the patents valid and infringed and awarded damages of $44.1 million. Five months after the verdict, the Board issued final written decisions holding all challenged claims of Ultratec's patents were either anticipated or would have been obvious. The district court subsequently stayed all post-judgment proceedings pending final resolution of the IPRs.

CaptionCall retained the same invalidity expert—Mr. Benedict Occhiogrosso—in the district court litigation and the IPRs. In some instances, Mr. Occhiogrosso testified about the same issues and references in both proceedings.

Ultratec sought to introduce the trial testimony into the IPRs, alleging that Mr. Occhiogrosso's trial testimony conflicted with written declarations he made in the IPRs.

Ultratec moved to supplement the record with the inconsistent Occhiogrosso trial testimony. Because Ultratec had not first requested authorization to file the motion with the inconsistent testimony, the Board expunged the motion from the record. PTO Br. at 10 n.8. The Board's regulations require that a party seeking to introduce supplemental evidence more than one month after institution first request authorization to file a motion to submit the evidence. 37 C.F.R. § 42.123(b). As the PTO explained to Ultratec, with regard to its request to file a motion to supplement the record, "[n]o evidence is permitted to be filed," and the briefing "must not include a discussion of the contents or types of the particular documents sought to be entered." PTO Br. at 10 n.8. On October 30, 2014, within a week of the jury trial, Ultratec requested authorization to file a motion to submit portions of Mr. Occhiogrosso's trial testimony to the Board. Ultratec alleged that Mr. Occhiogrosso's trial testimony addressing a prior art reference was inconsistent with his IPR declarations on that same point.[1] On November 4, 2014, the Board held a conference call to consider Ultratec's request for authorization to file a motion to supplement the IPR record with Mr. Occhiogrosso's trial testimony. The Board did not review the testimony when deciding whether it could be admitted. J.A. 9005; *see* PTO

---

[1]     *See* J.A. 6818 ("For example, the type of testimony Patent Owners were proffering included Mr. Occhiogrosso testifying generally in agreement with Patent Owner's points above that traditional VCO is a one-line arrangement, and that there are differences between the embodiments in Sections 4(a), 4(b), and 4(c) of *McLaughlin*.").

Br. 10 n.8. It denied Ultratec's request during the call and indicated a written order would follow. The Board never issued any such order. On November 19, 2014, two weeks after the conference call, the Board conducted a short oral hearing on the Ultratec patents.[2]

The Board issued final written decisions, holding that every challenged claim was either anticipated or would have been obvious. These final written decisions rely heavily on the Board's belief that Mr. Occhiogrosso was a credible witness. *See, e.g.*, J.A. 11,206 ("It is within our discretion to assign the appropriate weight to the testimony offered by Mr. Occhiogrosso."). The Board cited Mr. Occhiogrosso's testimony over thirty times to support its findings, including at least once for each of the eight patents on appeal.[3] In some instances, the Board explicit-

---

[2]    The PTO at times refers to the IPR proceedings as a "trial." PTO Br. 5. Very seldom do IPR proceedings have the hallmarks of what is typically thought of as a trial. *See* Joanna Shepherd, *Disrupting the Balance: The Conflict Between Hatch-Waxman and Inter Partes Review*, 6 NYU J. INTELL. PROP. & ENT. L. 14, 37 (2016) ("In contrast to the expansive discovery and witness testimony that is common in district court litigation, discovery is significantly restricted and live testimony is rarely allowed in IPR proceedings."); Eric Cohen, *A Primer on Inter Partes Review, Covered Business Method Review, and Post-Grant Review Before the Patent Trial and Appeal Board*, 24 FED. CIR. B.J. 1, 5 n.40 (2014) (noting that in the first two years of IPRs, the Board allowed live testimony once). In this case, the IPR proceeding itself was limited to a brief argument by the lawyers for each side, and there was no live testimony by any witness.

[3]    *See, e.g.*, -1706 appeal J.A. 27, 49, 53 (addressing the '314 patent); J.A. 3644, 3648, 3655, 3660, 3664 (ad-

ly found Mr. Occhiogrosso more credible than Ultratec's expert. *See* J.A. 23 ("We credit the testimony of Mr. Occhiogrosso over that of Mr. Steel on this issue . . . ."); J.A. 3660 ("Weighing Mr. Occhiogrosso's testimony against Mr. Ludwick's testimony, we credit Mr. Occhiogrosso's testimony . . . ."); J.A. 7403 ("On this point, based on our review of McLaughlin, we credit the testimony of Petitioner's declarant, Mr. Occhiogrosso, over that of Patent Owner's declarant, Mr. Ludwick."). In other instances, the Board found Mr. Occhiogrosso credible on the very issue Ultratec alleges he contradicted at trial. *See* J.A. 6383 ("We are persuaded by Mr. Occhiogrosso's testimony that a person of ordinary skill in the art would consider McLaughlin to be disclosing a device capable of all of the HCO/VCO features described therein."); *see also* J.A. 23, 27, 7403.

Ultratec moved for reconsideration on a variety of grounds, including that the Board failed to consider Mr. Occhiogrosso's trial testimony and failed to explain its decision to exclude the new evidence. *See* J.A. 6818–20. The Board denied the motion to reconsider. It reasoned:

> On November 4, 2014, after discovery and briefing were complete and a month before oral hearing, we held a conference call in which we denied Pa-

---

dressing the '482 patent); J.A. 7393, 7395, 7403, 7405 (addressing the '578 patent); J.A. 7419, 7420, 7421 (addressing the '578 patent on rehearing); J.A. 11,195, 11,205, 11,206 (addressing the '346 patent); -1708 appeal J.A. 23, 27 (addressing the '740 patent); J.A. 38, 40 (addressing the '740 patent on rehearing); J.A. 3224 (addressing the '104 patent); J.A. 3237, 3239 (addressing the '104 patent on rehearing); J.A. 6383 (addressing the '082 patent); -1713 appeal J.A. 23, 24, 3262 (addressing the '835 patent).

tent Owner's request for authorization for a late submission of additional evidence. *See* 37 C.F.R. § 42.20(b) ("A motion will not be entered without Board authorization"); *see also* 37 C.F.R. § 42.123(b) (explaining that the late submission of supplemental information must be in the interests of justice). Patent Owner argues that the record is incomplete because we did not issue an order denying its motion. Req. Reh'g 13–14. Patent Owner's [sic] mischaracterizes the events in this proceeding because no such motion was denied; we denied Patent Owner's *request for authorization* to submit evidence and, as such, no order denying its motion was necessary. To the extent Patent Owner wishes its denial of authorization to file late evidence to be further memorialized, this paper serves such purpose.

J.A. 6394–95 (emphasis in original).

Ultratec filed a motion to supplement the appellate record, requesting that the Board make part of the record Ultratec's request for authorization to file a motion to supplement the record with Mr. Occhiogrosso's trial testimony and the Board's denial of that request. J.A. 9002–03. The Board held that "the records would be adequately supplemented" by adding only two documents: Ultratec's motion for rehearing of the final written decision, and the Board's denial of that motion. J.A. 9003. Ultratec then filed a second motion to supplement the appellate record. This time, Ultratec requested the Board include Ultratec's October 30, 2014 email to the Board requesting a conference call to address its request for authorization to file a motion. The Board denied the motion. It explained the "emails requesting conference calls are intended to be administrative in nature; it is improper for substantive arguments to be made in emails requesting conference calls." J.A. 9046 n.3.

Ultratec appealed to our court.  The PTO intervened to defend the Board's decision.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

We review the Board's decision of how it manages its permissive rules of trial proceedings for abuse of discretion.  *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 442 (Fed. Cir. 2015).  The Board abuses its discretion if the decision: (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) involves a record that contains no evidence on which the Board could rationally base its decision.  *Id.* (quoting *Abrutyn v. Giovanniello*, 15 F.3d 1048, 1050–51 (Fed. Cir. 1994)).

Congress gave the PTO authority to "prescribe regulations establishing procedures for the submission of supplemental information after the petition is filed."  35 U.S.C. § 316(a)(3).  Under the PTO's regulations, a party seeking to submit supplemental information more than one month after the date an IPR is instituted must request authorization to file a motion to submit the information.  37 C.F.R. § 42.123(b).  The request to submit new information must show: (1) why the supplemental information reasonably could not have been obtained earlier, and (2) that consideration of the supplemental information would be in the interests of justice.  *Id.*  The PTO considers the interests of justice as slightly higher than good cause:

> Good cause and interests-of-justice are closely related standards, but the interests-of-justice standard is slightly higher than good cause.  While a good cause standard requires a party to show a specific factual reason to justify the needed discovery, under the interests-of-justice standard, the Board would look at all relevant factors.  Spe-

> cifically, to show good cause, a party would be required to make a particular and specific demonstration of fact. Under the interests-of-justice standard, the moving party would also be required to show that it was fully diligent in seeking discovery and that there is no undue prejudice to the non-moving party.

77 Fed. Reg. 48,719 (Aug. 14, 2012). The Board's Patent Trial Practice Guide explains that when a party desires to request authorization to file a motion, it should institute a conference call with the Board. 77 Fed. Reg. 48,762–63 (Aug. 14, 2012). The Guide explains that:

> Typically, the Board will decide procedural issues raised in a conference call during the call itself or shortly thereafter, thereby avoiding the need for additional briefing. The Board has found that this practice simplifies a proceeding by focusing the issues early, reducing costs and efforts associated with motions that are beyond the scope of the proceeding.

*Id.*

This record affords but one reasonable conclusion: Ultratec satisfied both of § 42.123(b)'s requirements for allowing Ultratec to file a motion to admit Mr. Occhiogrosso's trial testimony. First, the evidence could not have been obtained earlier. Ultratec emailed the Board requesting authorization to file a motion to supplement the record the week after the jury trial concluded. This is not evidence that could have been located earlier through a more diligent or exhaustive search; it did not exist during the IPR discovery period. The fact that Ultratec could have, but did not, depose *and* obtain inconsistent testimony from Mr. Occhiogrosso during the IPR itself is not a basis for concluding otherwise. Ultratec argues that during cross examination at trial in front of the jury Mr. Occhiogrosso offered testimony that is inconsistent with

his IPR testimony. That inconsistent testimony did not exist sooner and thus could not have been proffered to the Board sooner.

The Board offers no reasoned basis why it would not be in the interest of justice to consider sworn inconsistent testimony on the identical issue. Ultratec sought to offer recent sworn testimony of the same expert addressing the same patents, references, and limitations at issue in the IPRs. A reasonable adjudicator would have wanted to review this evidence. If Mr. Occhiogrosso gave conflicting testimony on cross-examination, this would be highly relevant to both the Board's analysis of the specific issues on which he gave inconsistent testimony and to the Board's overall view of his credibility. Mr. Occhiogrosso's testimony was critical to the Board's fact findings in this case, as the opinions' repeated reliance on it establishes. Under such circumstances, no reasonable fact finder would refuse to consider evidence of inconsistent sworn testimony. Moreover, any such inconsistencies would likely bear on the overall credibility of the expert.

Admitting and reviewing Mr. Occhiogrosso's trial testimony would have placed minimal additional burden on the Board. Live testimony is rare in IPR hearings, which typically last only about an hour. *See* 77 Fed. Reg. at 48,762. The Board—as it did in these IPRs—makes credibility determinations based only on written declarations. Ultratec sought to introduce more written testimony. This is the exact type of evidence the Board routinely relies upon to determine credibility. There would have been very little administrative burden to reviewing more on-point testimony from the same expert on the same exact issues. Had the testimony been inconsistent, a reasonable fact finder would consider the inconsistencies.

Had the testimony been consistent, the Board would not have had to spend any more time on the issue.[4]

A number of problems with the Board's procedures contributed to its errors in this case. First, the Board lacked the information necessary to make a reasoned decision. According to the Board, the movant cannot submit for consideration the evidence it seeks to admit into the record, and its briefing "must not include a discussion of the contents or types of the particular documents sought to be entered." PTO Br. at 10 n.8. In this case, the Board denied a request to admit evidence without ever seeing the evidence it was denying; it never reviewed Mr. Occhiogrosso's testimony because Ultratec was not allowed to submit that evidence with its request to file a motion to supplement the record. The Board's only exposure to the disputed testimony was the parties' competing characterizations of it during the conference call for which there exists no record.

---

[4] The PTO speculates on appeal that the Board denied the request for authorization because it was too late in the proceedings to admit new evidence. PTO Br. 19. Section 42.123(b) expressly contemplates late submission of supplemental information and articulates the two factors to be assessed in determining its admissibility. It thus cannot be the case that the late filing alone precludes consideration of the evidence. Ultratec requested to supplement the record three weeks prior to the IPR hearings. This would normally give the Board sufficient time to review the supplemental testimony and prepare any necessary questions for oral argument. Moreover, the same statute that imposes a one-year deadline for the Board to make its final determination gives it the ability to extend the deadline if good cause is shown. *See* 35 U.S.C. § 316(a)(11).

Second, the Board's procedures allowed it to make significant evidentiary decisions without providing an explanation or a reasoned basis for its decisions. *See Motor Vehicle Mfs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." (internal quotation marks omitted)).

Third, the Board's procedures impede meaningful appellate review of the agency decision-making. "[W]e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned, but we may not supply a reasoned basis for the agency's action that the agency itself has not given." *Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co.*, 856 F.3d 1019, 1024 (Fed. Cir. 2017) (internal quotation marks omitted). "For judicial review to be meaningfully achieved within these strictures, the agency tribunal must present a full and reasoned explanation of its decision." *In re Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002). The agency does not have unfettered discretion in these matters, and we cannot affirm agency decision-making where the agency fails to provide a reasoned basis for its decision. *See SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted b[e] clearly disclosed and adequately sustained."); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis."). There is no Board order explaining why it denied Ultratec's request to file a mo-

tion to supplement the record. Nor is there any Board explanation capable of review from the conference call.[5] We are also prohibited from viewing Mr. Occhiogrosso's testimony because it is not part of the record. In district court litigation, a party dissatisfied with a ruling excluding evidence is allowed to make an offer of proof to preserve error. Fed. R. Evid. 103. Parties in IPRs are not given similar protections.[6] In this case, the PTO forbade even a "discussion of the contents or types of the particular documents sought to be entered." PTO Br. at 10 n.8. And it refused to permit the record to include Ultratec's email requesting authorization to file a motion to supplement the record. Excluding such discussion from the record contributes to the unreviewability of the Board's decision-making.

---

[5] The PTO indicated that the Board typically utilizes conference calls to address issues such as requests for extensions or requests to extend page limits. Oral Arg. at 54:45, 1:02:00. We do not address whether the Board can decide these types of minor procedural issues during conference calls. We hold that when the Board makes a substantive evidentiary ruling, it is required to explain its decision.

[6] During oral argument, CaptionCall argued that although Mr. Occhiogrosso's trial testimony was not part of the IPR record, it is publicly available as part of the district court record, and therefore we could take judicial notice of the testimony and determine in the first instance whether it was consistent with his IPR declarations. Oral Arg. at 40:30–43:25. Our court does not have authority, as CaptionCall urges, to review evidence not considered by the agency and make factual determinations about the substance of that evidence.

CaptionCall and the PTO argue Ultratec bore the responsibility to memorialize the conference call if it desired a written record. CaptionCall Br. 28; PTO Br. 25. There are, however, no statutes, regulations, statements in the Patent Trial Practice Guide, nor even notes on the PTO's website informing parties that they have the right to hire a stenographer to transcribe conference calls. We find no burden on the patentee to memorialize agency action or reasoning. It is the agency that has the obligation to fulfill its APA duty to provide a "satisfactory explanation for its action." *See Motor Vehicle Mfs. Ass'n*, 463 U.S. at 43.

The only reason there is any written record of the dispute is because Ultratec raised the issue in a motion for rehearing. The Board addressed the issue in its order denying rehearing, but it did not explain why it denied the request for authorization. *See* J.A. 6394–95. The Board noted that a conference call occurred, but it never stated what was discussed on the call. J.A. 6394. Nor did the Board address the substance of Mr. Occhiogrosso's trial testimony. *Id.* And although the Board cited the interests of justice provision of 37 C.F.R. § 42.123(b), it never explained why its actions were in the interests of justice. *Id.* The Board explained that it was not obligated to provide an explanation in the first place. The Board reasoned that "Patent Owner argues that the record is incomplete because we did not issue an order denying its motion. Req. Reh'g 13–14. Patent Owner's [sic] mischaracterizes the events in this proceeding because no such motion was denied; we denied Patent Owner's *request for authorization* to submit evidence and, as such, no order denying its motion was necessary." *Id.* If the APA requires the Board to explain a denial of a motion then it likewise requires the Board to explain the denial of a request to make a motion. To the extent the Board views the two-step process it created to file motions as insulating it from its APA obligations, this is incorrect.

The Board abused its discretion when it refused to admit and consider Mr. Occhiogrosso's trial testimony and when it refused to explain its decision. Because the Board relied on Mr. Occhiogrosso's credibility in every IPR, we vacate every decision. *See In re Van Os*, 844 F.3d 1359, 1362 (Fed. Cir. 2017) ("[W]hen the Board's action is potentially lawful but insufficiently or inappropriately explained, we have consistently vacated and remanded for further proceedings." (internal quotation marks omitted)). On remand, the Board shall admit and consider Mr. Occhiogrosso's trial testimony. If the Board finds he gave inconsistent testimony, the Board shall consider the impact on the specific patents at issue in the trial testimony *as well as* on his credibility as a whole.

## CONCLUSION

The Board's final written decisions are *vacated* and *remanded*.

## VACATED AND REMANDED

### COSTS

Costs to Ultratec.